## STROUSS and others *v.* WABASH, ST. L. & P. RY. Co.

(*Circuit Court, N. D. Ohio, W. D.*   June Term, 1883.)

1. CARRIER OF PASSENGERS — LIABILITY FOR MERCHANDISE CARRIED AS BAGGAGE.

    A carrier of passengers is liable as a common carrier for the ordinary baggage of passengers upon its trains, but it is not liable for loss or injury to packages of merchandise, passed as baggage, unless its agent having control of the receipt of the baggage was informed or knew what was contained therein, and no misrepresentation was made by the owner to the agent having charge of the business of checking the baggage.

2. SAME — LIABILITY FOR EXTRA BAGGAGE — DELIVERY.

    A railroad company is liable as a common carrier to the owners of extra baggage, where it is shown that the baggage-master accepted it with the knowledge, and with the understanding and arrangement between the passenger and himself, as the agent of the company, that extra pay should be made for the transportation thereof, and if he receive the extra baggage, gives his checks therefor, upon payment of the extra charge, the company will be liable as a common carrier to deliver the trunks at the place designated by the checks or contract of carriage, and is responsible for any injury occurring to the baggage in its transportation, and before its delivery at the place where it was to be delivered.

3. SAME — IMPLIED AUTHORITY OF BAGGAGE-MASTER — ACT OF GOD — LOSS OF BAGGAGE.

    Where a railroad company place a baggage-master in its baggage-room it holds out to the public that he has authority to make arrangements as to what sort of baggage shall be carried by the company, and a contract to carry extra baggage upon the payment of an extra charge made by him will be binding on the company, and it can only be excused from the safe delivery of such baggage by showing that it was lost by some act of God, or the public enemy, which could not be prevented by the exercise of proper care on its part.

4. SAME — SUDDEN FLOOD — QUESTION FOR JURY.

    A sudden and extraordinary flood in a river is to be regarded as the act of God; and in an action by the owner of baggage for damage caused thereby, the jury are to determine, from all the circumstances of the case, whether, after the baggage-master of the railroad company received and checked such baggage the flood came so suddenly that, under the circumstances, the injury could not have reasonably been prevented by the company or its agents by the use of all possible means; and if they find that it could have been done with the exercise of reasonable and proper and all possible means that could be exercised and used by its agents, it was bound to place such baggage in a place of safety and prevent damage to the goods, and the owner is entitled to recover.

5. SAME — PRESERVATION OF GOODS AFTER DELIVERY TO CARRIER.

    After goods are delivered to a carrier to be transported to a particular place, they are in the custody of the carrier, and it is the duty of the carrier to preserve them from damage by reason of a sudden flood, as far as is in his power, and not the duty of the owner thereof.

6. SAME — MEASURE OF DAMAGES.

    The measure of damages in such a case is the loss which the owner of the goods has sustained by the breach of the contract. The jury are to judge of the value of the goods, and where a part of them have been sold, whatever was realized from such sale is to be deducted from the general value thereof, and the balance would be the measure of damages.

At Law.

*Mr. Hubbard,* for plaintiffs.

*John R. Osborn,* for defendant.

WELKER, J., (charging jury.) The plaintiffs were clothing merchants in the city of Rochester, New York, and one of their firm—Mr. Isaac J. Beir—was in the city of Toledo, on the eleventh day of February, 1881, with three trunks, such as are usually carried by commercial travelers, filled with goods in their line,—with clothing belonging to plaintiffs,—and Beir desired to go as a passenger on the passenger train of the defendant, to start that night at 12:05, from Toledo to the town of Napoleon, on the railroad of the defendant, and take with him, as baggage, the three trunks. He left the Boody House shortly after 10 o'clock in the evening, on the omnibus of the Toledo Transfer Company, with his three trunks, and went to the depot of the defendant, where the trunks were placed by the agent of the Transit Line, on the truck of the defendant, and placed by him in the baggage-room of the defendant at the depot. Shortly afterwards, Beir, having purchased a ticket for Napoleon, went into the baggage-room and asked the baggage-master to check the three trunks to Napoleon, informing him they weighed some 600 pounds more than was allowed as baggage, whereupon the baggage-master charged him two dollars and forty cents extra for the trunks, which he then paid him, and the baggage-master gave him three checks for the trunks, in the usual way. Beir then soon after went on to the passenger train of the defendant to await its starting for Napoleon. While Beir was in the baggage-room of defendant the water began to cover the floor of the room, and the baggage-master left the trunks in the room on the trucks, and carried Beir on his back to a higher point near the ticket-office, where he left him, and did not return for the trunks to put them in the baggage-car, but, soon after, left the depot in the United States mail wagon on account of the high water. Soon after, the water came in and submerged the trunks, and the depot and the railroad tracks, so that the train did not leave that night, and Beir was taken from the train in a boat. By morning there was some six feet of water in the depot, wetting the goods in the trunks and doing great damage to them.

Plaintiffs sue to recover the loss of the goods contained in the trunks, on the ground that the defendant did not deliver the trunks at Napoleon according to its contract as a common carrier, and was also guilty of negligence and carelessness in not placing the trunks in a safe place, and in not taking proper care of them as common carriers, by reason of which the goods were damaged and injured. This carelessness and negligence are denied, and it is claimed by defendant that the injury was occasioned by a sudden and unexpected flood of the river, being the act of God, and which the defendant could not foresee or provide against.

The defendant, being a carrier of passengers, is liable as a common carrier for the ordinary baggage of the passengers upon its trains. As carrier of passengers, defendant was not liable for loss or injury to packages of merchandise, packed as baggage, unless its agent

having the control of the receipt of the baggage was informed or knew what was contained in the trunks, and no misrepresentation made by the owner to the agent having charge of the business of checking the baggage on that occasion.   The company is liable as a common carrier to the owners of extra baggage where it is shown that the baggage-master accepted it with the knowledge, and with the understanding and arrangement between the passenger and himself, as the agent of the company, that extra payment should be made for the transportation thereof.   If he took, under such an arrangement as that was, the three trunks, and gave his checks for them, then it made such a contract between the railroad company and the plaintiffs in this suit, for the breach of which an action might lie in favor of the plaintiffs for injuries sustained to the goods.   If the baggage-master had knowledge of the character of these trunks, that they contained merchandise, and contained other matters than the personal baggage of the plaintiffs, or this member of the firm of the plaintiffs, then if he charged for the extra baggage and accepted it as such, it makes the company liable as common carriers to deliver the trunks at the place designated by the checks or contract for carriage between the plaintiffs and the railroad company, and it would be responsible for any injury which would occur to this baggage in its transportation and before its delivery at the place where it was to be delivered.   The railroad company, having placed the baggage-master in its baggage-room, holds out to the public that he has authority to make arrangements as to what sort of baggage shall be carried by the railroad company, and having given him the direction and the control and the management of these articles of freight, he, in the eye of the law,—so far as the outside public is concerned,—would be authorized and have authority to make such contract as is claimed by the plaintiffs in this suit that this baggage-master did make, and to bind the company in that respect.   So that, although these trunks were not filled with the ordinary baggage of the passenger, if he accepted them as merchandise and took extra pay for them, and gave a check indicating their receipt on behalf of the railroad company, that would be such a contract as would authorize plaintiffs to bring suit in case it was broken.

As soon as the baggage-master in the room accepted the extra pay and gave his checks to Beir, the trunks passed into the possession of the defendant, and at that time the relation of common carrier between the plaintiffs and the defendant railroad company was created, and the responsibilities and rights growing out of that relation, attached thereto.   Now, by the implied contract resulting from this relation of common carrier of these goods,—(and it does not matter very much whether they were shipped as mere baggage or as merchandise, if they were accepted by the baggage agent without any misrepresentation or fraud on behalf of the plaintiffs, or member of their firm; it makes but very little difference as to their liability

whether they were to be shipped as merchandise, or as trunks of baggage,—the same liability is upon the company, as a common carrier of merchandise, as is incumbent upon the company as a common carrier of passengers,)—by the implied contract the defendant undertook to carry this baggage to Napoleon. The defendant can only be excused from the safe delivery of these trunks by showing that the baggage was lost by the act of God or the public enemy, and which could not be prevented by the exercise of proper care on its part. A sudden and extraordinary flood in the river is to be regarded by you as the act of God. The fact of the rumors of flood up the river, and the indications of a rise of the water, in the Exchange-room and about the city of Toledo for two or three days before, does not have much bearing upon this case, because, until the baggage of the plaintiff went to the depot and the trunks were checked, this railroad company owed them no duty. There was no contract between them which required the defendant to know whether there was going to be a great flood or a small freshet. That does not enter into the character of this contract; but when these trunks were delivered there, then there was created a relation, and a duty incumbent upon this railroad company to transport these trunks according to contract.

You will take the parties, then, as they were at the time when this contract was made, and you will measure the rights of the plaintiffs and the liabilities of the defendant from that time forward; so that although, as a matter of fact, the rumors were afloat around the city, (and it may be that in another class of cases this railroad company and its officers were bound to take notice of an impending flood and take care of property intrusted to their care in other relations as well as common carrier; it may be they were required to use such means as would protect the property before the flood came on, but that would only be in cases where it had the property of the party in posession before that time, and while that relation existed between plaintiff and defendant;) but this relation was created so late in the evening that you must take the parties at that time, and judge of their rights and liabilities in that connection.

In the first place, the defendant, at the late period when this contract was made, could not change its depot grounds and property— could not make them any more secure against the impending flood. Immediately after the receipt of these goods the defendant was bound, in its relation of common carrier,· to exercise certain care and duties connected with these trunks, and that duty consisted in taking care of them, and preventing them from being damaged by the flood that had then commenced to come into the depot.

You will see, then, from the statements of these general principles, that the important question for you to settle from the evidence is whether, after these trunks were received by the baggage-master and checked, the flood came so suddenly that, under the circumstances, the injury could not have reasonably been prevented by the defend-

ant, or its agents in charge of the trunks, by the use of all possible means. If it could have been done with the exercise of reasonable and proper and all possible means that could be exercised and used by these officers, then the defendant was bound to place the trunks in a place of safety and prevent damage to the goods in the trunks. If, under the circumstances, it could not have been so reasonably and possibly done,—with the surroundings of the parties at that time, from the impending flood,—the sudden character of the flood,—if they could not take care of the goods under these circumstances, then you will be justifiable in saying that they were injured by the act of God; but the theory of that is that the company must use every possible means to prevent the flood from damaging the goods. The general rule is that if goods in the hands of a common carrier are damaged by the public enemy,—as in case of the army destroying goods at a depot in the late war,—then the law says the common carrier is not to be held responsible for the loss of the goods. And so of sudden floods and cyclones, that render it beyond the power of the company to take care of the goods and protect them. And this question narrows itself down to the fact as to what care this defendant gave, under the circumstances, to these goods that night, in order to save them from injury, and what it did do. If, by the exercise of the means within its control, with all the surroundings as the depot was fixed, (the plaintiffs put their trunks there in the depot as it was constructed,) and you could not expect the railroad company to make any extraordinary provisions such as were only required on extraordinary occasions, but it would be required to use all the machinery it had around it to make this baggage secure, —its officers did all that was possible to be done under the circumstances, then it is not liable; if they did not do that, then it is liable to this plaintiff for the damages resulting from its failure to carry these goods safely to Napoleon, and is only to be excused from the performance of this contract by the happening of an act of Providence that they could not avoid. Apply the evidence to that point and that will settle the liability of this railroad company. Do not bother yourselves very much about these general rumors, because, at the time these rumors were on the street, this contract did not exist between these parties; no relation existed between them.

Something has been said in regard to the duty of the plaintiffs after the flood was over. It is claimed by the defendant that Col. Andrews, the general agent, said to the plaintiff, "Go and get your trunks down at the depot and take care of them yourself." And it is said by the plaintiffs that they offered to give Col. Andrews the keys, so that he might have the trunks opened and save what he could. It seems that the goods where left in there longer than they ought to have been on account of the misunderstanding between the parties. I direct you that this common carrier was to take the goods and carry them to Napoleon, and notwithstanding Col. Andrews said the plain-

tiffs must go and take care of the goods, their failure to do so does not relieve the railroad company for the injury sustained by the delay. The railroad company could have opened out these goods and taken care of them, for the reason that it was the custodian of them; they were in its possession for transportation and delivery at Napoleon, and it could not compel the plaintiffs to take the goods until they were delivered at Napoleon, and if it let them get damaged by remaining longer in the water, it did it at the risk of having to pay more damages than if it had taken them out earlier after the flood. It was the duty of the railroad company, if it wanted to relieve itself from liability, to have taken these goods out as early as possible, and to save as many as it could. It was not the duty of the plaintiffs to take charge of them. They were locked up in the baggage-room, and plaintiffs had no business to take possession of them, and could not. The burden is upon the railroad company to show that it could not, under the circumstances, comply with the contract by reason of the great flood. If it has succeeded in satisfyng you that it could not perform this contract, that will relieve it from liability for injuries to these goods; if it has not done so, then plaintiffs are entitled to the damages sustained to the goods. If you find that the defendant did discharge its duty, your verdict will be for the defendant. If you find otherwise, you will proceed to determine the amount of the injury which the plaintiffs have sustained by reason of the failure to perform this contract on behalf of the railroad company. The measure of recovery is the loss which the parties sustained by the breach of the contract. The rule is to restore to them whatever damages they have sustained. You are to judge of the value of the goods. A part of the goods were sold; whatever was realized from the sale of the goods is to be deducted from the general value thereof, and the measure of damages would be the balance after deducting the amount realized from the total damages sustained by reason of the goods having been wet.

Verdict for the plaintiffs, and motion for new trial overruled.